FILED

DEC 09 2020

U.S. BANKRUPTCY COURT
Knoxville, Tennessee

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re:<br>MARGARET ELIZABETH KINNEY<br>　　　　　Debtor | Case No. 3:20-bk-30540-SHB<br><br>Chapter 7 |
| William Kinney<br>　　　　　Plaintiff<br>v.<br>F. Scott Milligan<br>　　　　　Defendant | Ad. No. _____ |

## ADVERSARY COMPLAINT

Margaret Kinney, the debtor ("Margaret"); and William Kinney, a creditor ("William");[1] both beneficiaries of the estate (collectively, the "plaintiffs"), allege that Mr. F. Scott Milligan, in his individual capacity and in his capacity as counsel for the Chapter 7 Trustee, and also in his capacity as the Chapter 7 Trustee (collectively, "Mr. Milligan") willfully and deliberately induced Margaret Kinney to ask Sarah Valdes ("Sarah") to record a deed post-petition that Sarah had no intention of recording.[2] Plaintiffs contend, Mr. Milligan devised a scheme in order to unlawfully bring Sarah's property into the bankruptcy estate, by asking Margaret in an email to "see a copy of the recorded deed," when he knew the deed had not yet been recorded. Such a request was not made in connection with his official capacity, it was not judicial in nature or authorized by the bankruptcy court; it was uttered in bad faith and grossly negligent, which constitutes a wrongdoing committed outside the scope of the trustee's authority, in the clear absence of all jurisdiction. Acting ultra vires, Mr. Milligan has converted Sarah's property for his

---

[1] William has an equitable interest in 2444 Allegheny Loop Road for repairs and restoration work performed since 2007, and totaling approximately $25,000.00, as well as a $56-60,000.00 or more interest in the dwelling located on 2442 Allegheny Loop Road. The collateral securing the debt is the real property. William is also an indispensable party in the Trustee's action against Sarah, and should have been included by the trustee.

[2] See attached affidavit. Also, the time to avoid Sarah's deed was extinguished by T.C.A. 66-3-310 when the trustee manipulated the circumstances in order to have Sarah record her Deed.

1

own personal use while intentionally making the bankruptcy court a party to his fraudulent scheme.[3] By amending his complaint (No. 3:20-ap-3032) Mr. Milligan is now attempting to use the court to unlawfully sell Sarah's property (on which we reside, free and clear), in violation of the code and the Fourth and Fifth Amendment to the U.S. Constitution. Plaintiffs ask the court to infer, that the bringing of such an action by Mr. Milligan was for the purpose of extorting money from Sarah and the plaintiffs, in favor of the intended beneficiary, Anderson Lumber Co., Inc. ("Anderson").

1.    Furthermore, plaintiffs contend, because Mr. Milligan had to resort to fraud and subterfuge in manipulating the post-petition recordation of Sarah's Deed, Mr. Milligan knew or should have known that the cause of action stated in his original complaint, as well as his amended complaint now before the court, is "meritless," and the continued pursuit of that cause of action is an abuse of process, another intentional tort which is also outside the scope of the Trustee's duties.

2.    Plaintiffs have brought this suit for damages against Mr. F. Scott Milligan as an individual, and in his capacity as counsel for the Chapter 7 Trustee. Plaintiffs are asking the court for leave to sue Mr. Milligan, pursuant to 11 U.S. Code § 323 (b), on behalf of the Estate, in his official capacity as the legal representative and fiduciary of the estate; for fraud, Fraud Upon the Court, gross negligence, fraudulent transfer, fraudulent misrepresentation or fraudulent concealment, abuse of process, and violation of the bankruptcy stay arising from his role in the fraudulent transfer made by the forced post-petition recordation of Sarah's Deed, and the Intentional Infliction of Emotional Distress.[4]

Plaintiffs also seek a declaratory judgment that the property is owned by Sarah E. Valdes.

---

[3] An attorney, as an officer of the court, has a duty of honesty towards the court. Where an attorney neglects that duty and obtains a judgment based on conduct that actively defrauds the court, such judgment may be attacked, and subsequently overturned, as fraud on the court. H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1119 (6th Cir. 1976) See also Mosser v. Darrow, 341 U.S. 267, at 274–75, the Supreme Court found the trustee personally liable because he committed a willful and deliberate act.

[4] "... should a receiver, instead, wrongfully or by mistake take possession of property belonging to another, the injured party "may bring suit therefore against [the receiver] personally as a matter of right; for in such case the receiver would be acting ultra vires." If found liable, the receiver, not the trust, would be responsible for compensating the injured party for any losses. Barton v. Barbour, 104 U.S. 126, 134.

2

## JURISDICTION

3.   The court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1334. This matter is a core proceeding as it involves the administration of the estate and the liquidation of assets of the estate. 28 U.S.C. § 157(b)(2)(A) and (O). Specifically, an abuse of process action against a trustee is a core proceeding. Kirk v. Hendon (In re Heinsohn), 247 B.R. 237, 244 (E.D. Tenn. 2000).

## I. INTRODUCTION

4.   Mr. Milligan deliberately failed, (1) to record the Adversary complaint number on the Main Bankruptcy Case DOC 110, and (2) somehow Mr. Milligan was able to take steps to prevent the Adversary Complaint against Sarah Valdes [No. 3:20-ap-3032] from appearing under the main bankruptcy case at PACER. These two actions served to prevent us from knowing of any scheduled proceeding against Sarah that might substantially affect us as parties in interest.[5] Mr. Milligan also failed to properly notice the hearing held on October 22, 2020; and we were shut out from providing the information now being presented, which the court needed in order to make an informed decision about the property located at 2444 Allegheny Loop Road ("subject property").

5.   Mr. Milligan's fraud has seriously affected the substantive rights of the parties to a disinterested trustee, and the court should deny Mr. Milligan's request to sell the subject property as stated in his amended complaint (Case No. 3032), and to enjoin Mr. Milligan from taking any further action in the case until a trial can be held on the merits.

6.   By fraudulently inducing Margaret to take an action that she would not have otherwise taken, Mr. Milligan has violated his fiduciary duty of care, and acted in gross negligence toward the debtor, creditor William Kinney, and the bankruptcy estate, in order

---

[5] Plaintiffs do not have a complete understanding of how the CM/ECF process works, but it appears that during either Step #17, <u>Notice of Electronic Filing Screen & Filing Fee Payment Screen</u>, or Step # 21, <u>Summons</u>, Mr. Milligan failed to fill in the Adversary Case Number, or in some other way, he deliberately caused the complaint to be docketed without the adversary complaint appearing under the main bankruptcy case, which constitutes fraud and Fraud Upon the Court.

to sell property that is not property of the estate. Mr. Milligan has violated the duty of loyalty by acting in his own interests, and the duty of obedience by acting outside of his permitted authority as trustee. Mr. Milligan, as an attorney, has also violated his duty of candor to the court, and committed Fraud Upon the Court, by manipulating the judicial process to obtain a court order favorable to his private interests, and therefore is not entitled to absolute immunity. [In re Continental Coin Corp., 380 B.R. 1, at 14 (2007)]

## II. OTHER FACTS THAT QUESTION MR. MILLIGAN'S IMPARTIALITY

7. Under the code, a trustee must act with proper care and diligence and act entirely disinterested from the position of trust. Plaintiffs are beneficiaries of the bankruptcy estate and in a fiduciary relationship with the bankruptcy trustee. Accordingly, we are owed the common law fiduciary duties applicable to a trustee as well as the statutory duties set forth in the code. [7]

### A. Failure to Validate Anderson's claim

8. Pursuant to **11 U.S. Code § 704(a)(5)**, the trustee shall - **examine proofs of claims** and object to the allowance of any claim that is improper. Anderson has presented a claim in the form of a judgment lien, to be paid during the claims allowance process, that is legally invalid. While Anderson has not filed a formal proof of claim on Official Form 410, Anderson has made no less than five informal proofs of claim signifying their intent to collect from the estate. CHAPTER 8 of the Handbook for Chapter 7 Trustees (ADMINISTRATION OF A CASE, Section O (REVIEW OF CLAIMS), 1. OBJECTION TO CLAIMS, states:

> Section 704(5) requires a trustee to examine proofs of claim and object to the allowance of any claim that is improper. Some of the items a trustee should consider when reviewing claims are listed below:
>
> 1. If a claim is filed as secured, there should be appropriate documentation, e.g., UCC Financing Statement. The trustee should review this documentation

---

[7] "The plain language of the statute requires that the appointed interim trustee be "disinterested" in order to be eligible to serve. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)" Dye v. Brown (In re AFI Holding, Inc.), 355 B.R. 139, 147 (B.A.P. 9th Cir. 2006)

4

> *to determine whether the secured creditor's lien is subject to avoidance pursuant to § 544.*

Plaintiffs contend, if Mr. Milligan had made an attempt to assess whether or not there was appropriate documentation to support the judgment lien, he would find that there is none and the lien is avoidable.

> *The trustee should verify that the claim was properly perfected at least 90 days prior to the filing (one year for insiders). The trustee may be able to avoid a lien perfected within 90 days (or one year) pursuant to § 547.*

Plaintiffs contend, if Mr. Milligan had made an attempt to assess whether or not Anderson's claim was perfected, he would have found out that it was not perfected and could therefore be avoided. [See Adv. Compl. DOC 70, paragraphs 13-14] We consider the requirements stated above, that are placed upon the Trustee, to be part of the truth finding function of the court that we have been denied.

9.     We have raised the following issues in this case, supported by documentary and testimonial evidence, that invalidate Anderson's claim.

   a.     The Circuit Court for Blount County did not have subject matter jurisdiction over Anderson's claim, but proceeded anyway against the Kinneys.[8] As stated in our (First) Request to Take Judicial Notice fully reference herein [Adv. Compl. DOC 10], at a hearing held at District Court, Anderson could not produce any evidence of an account established by the Kinneys, in which a debt was owed. Anderson and Kizer & Black made false representations to Magistrate Judge H. Bruce Guyton that certain evidence existed, yet they could not produce it even when order to do so. Both the Supreme Court and the 6th Circuit has ruled that judicial admissions of the nature stated above, are conclusive and eliminate Anderson's right to recover. Mr. Milligan made no attempt to investigate Anderson's fraud in this matter, but rather required Sarah and Margaret to attend 2004 exams based on a presumption that included no evidence, that Margaret and/or Sarah mixed up two different sets of Deeds to accomplish some act of fraud. In other words, Mr. Milligan failed to perform an investigation into Anderson's well documented fraud, before accusing Margaret of fraud, which was a false allegation.

5

      b.    In our Second Request to Take Judicial Notice, we demonstrated to the court by documentary evidence, that Anderson used fabricated or false evidence and forged invoices in a scheme involving wire fraud and bank fraud to obtain a void judgment and judgment lien in state court. Pursuant to 18 U.S. Code § 152(4), a claimant need only

> "knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;"

This statute makes it a crime to <u>present</u> a false claim against the estate, it does not require the filing of Official Form 410 to make the relevant presentation. This is precisely what Anderson has done by presenting an invalid state court judgment lien against the estate. Mr. Milligan has displayed no interest in investigating the criminal acts of Anderson, Kizer & Black, and Blue Tarp, and as far as we know, he has not notified the United States attorney of the crimes committed by Anderson, Kizer & Black, and Blue Tarp, pursuant to 28 U.S. Code § 586(a)(F). [Anderson, K&B, and Blue Tarp, have falsely asserted before this court that a valid lien is present, which is enough to prove a fraud on the court by false oaths, and false claims under 18 U.S.C. § 152] Evidently, Mr. Milligan believes it is better for Sarah, her children, as well as William and Margaret to be thrown out of their homes by fraud and manipulation of the judicial process, rather than to confront Anderson and their counsel with fraud, public corruption, and multiple federal felonies committed in the procurement of a void judgment.

### B. Failure to Pursue Bankruptcy Estate Assets

10.    Margaret listed two lawsuits listed on her bankruptcy Schedule A/B that included

---

[8] An officer of the court, who has sworn an oath of admission to support the constitution, "so help me God," should be shocked at the prospect of a court proceeding against someone in the complete absence of jurisdiction. It reduces a United States citizen with all of the rights inherent in the federal and state constitution, to the legal status of a non-entity, unable to obtain justice. Such a person is beneath the status of an ante-bellum slave, whose condition was eventually abhorred by civilized society and finally overthrown, None the less, an ante-bellum slave had some protection under their master. Whereas, in our situation, the State of Tennessee accords us no protection in the form of rights, but rather has allowed Anderson, their counsel, and certain others to proceed against us in the complete absence of jurisdiction, unhindered by our constitutional rights.

compensatory and punitive damages. We provided documentary and testimonial evidence to support our allegations of fact, but Mr. Milligan failed to make diligent inquiry into the facts, pursuant to **11 U.S. Code § 1106 - (a)(4)(A)** which states; "...as soon as practicable--file a statement of any investigation .... to a **cause of action** available to the estate." Mr. Milligan's current plan to sell Sarah's property does not account for the compensatory damages Margaret claimed on Schedule A/B, which are most certainly available to the estate. Said compensatory damages, when factored into the estate, would compensate any real creditor without the sale of Sarah's property. Most assuredly, a jury would be able to see through the fraud and deceit perpetrated by Anderson and Mr. Milligan, thus, raising the likelihood of an award for damages from possible - to at least plausible. However, we have been consistently denied our right to a trial by jury.

### III. POINTS OF CONTENTION REGARDING MR. MILLIGAN'S COMPLAINT AND AMENDED COMPLAINT

11.    Anderson holds a void judgment lien against the Kinneys, which therefore blocks any sale under §363(h). Mr. Milligan stated that, *"The original premise of the adversary complaint was to set aside a transfer of real property from the debtor to the defendant."* [DOC 36, page 2] However, because Mr. Milligan forced the recordation of Sarah's Deed by fraud and deceit, the court's order of October 22, 2020 is facially invalid and must be set aside; with the recordation expunged of the record at the office of the Register of Deeds for Blount County, TN.

12.    Mr. Milligan also stated, *"Consistent with the Trustee's recovery of the real property interest for the bankruptcy estate, the Trustee now seeks to obtain Court approval of a sale of said property interest owned by the bankruptcy estate as well as the property interest remaining titled to Sarah Valdes pursuant to 11 U.S.C. § 363. Pursuant to 11 U.S.C. § 363(h), the Trustee may sell property jointly owned by the bankruptcy estate and a third party under certain circumstances."* Because Mr. Milligan's action is vindictive in nature, and meant to hurriedly cover up his wrongdoing by selling off the subject property as quickly as possible, he fails to state the "certain circumstance" the court would need

to contemplate before ruling on his request.[9] Even if the court's order avoiding Sarah's deed was legally valid; under Tennessee law, which was applied to the Court's findings of October 1, 2020, the property would be partitioned equally between Sarah and Margaret, and Margaret's half would be sold as part of the bankruptcy estate. According to relevant case law, jointly owned property is sold as one property belonging to the bankruptcy estate, only when partitioning is somehow physically or geographically impossible, or one of the parties adamantly objects to the proposed partition. [Tennessee law favors partition in kind. T.C.A. 29-27-201]. To begin with, the subject property in this case is easily partitioned in what <u>visually</u> appears to be two equal parcels along the power company's easement. Evidently, Mr. Milligan does not realize this because he did not survey the property, or even attempt to divide it from a satellite or tax map image. Even if the parcel were not exactly equal in square footage, Sarah has already indicated that she would take less to avoid a dispute, or if necessary, Margaret would do the same. According to our research, a court can authorize the trustee to dispose of another co-tenant's interest in property only if all four conditions set forth in Section 363(h) are met:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Neither 1-3 apply to our circumstances, which would allow a trustee to dispose of only the bankruptcy estate's undivided interest in the subject property pursuant to Section 363(b)(1). Quoting *In re Grabowski*, [137 B.R. 1, 3 (Bankr. S.D.N.Y. 1992)] the court

---

[9] "...seizing property not owned by the bankruptcy estate." Leonard v. Vrooman, 383 F.2d 556.

8

stated that "once the trustee makes a '*prima facie* case demonstrating that the estate would benefit from the sale of the residence, the burden shifts [to the non-debtor co-owner] to show facts indicating why the sale should not be approved." Mr. Milligan has not made a prima facie showing, neither has he made a fact-sensitive analysis as a preliminary investigation to show how the property might be divided, before asking the court to sell the entire piece; or, demonstrated how the estate would benefit from the sale of the entire property, including how the non-debtor owner would not be prejudiced by such a sale.

13.　　For example, in the case of In re Gauthreaux, [206 B.R. 502 (Bankr. N.D. Ill. 1997)], the debtor, Linda Gauthreaux, and Isaac Hendricks owned property as joint tenants. The debtor filed under chapter 7 and the trustee moved to sell the property under §363(h). The court found that the sale of the property could potentially net $21,350 for the bankruptcy estate, and this was found to "'constitute' a substantial benefit to the estate." In weighing the benefits of the estate against the detriment to the non-debtor co-owner, the court found the detriment to be "severe," in that:

    a.　　The non-debtor co-owner would not be able to obtain financing to enable him to exercise his right of first refusal under §363(i).
    b.　　There were no assurances that the sale share to the non-debtor co-owner would be enough to purchase a new home.
    c.　　The co-owner would be losing a good portion of the contributions and payments that he made toward acquisition, maintenance and retention of that property. The sale would have an adverse impact on the co-owner because he would no longer be able to deduct real estate taxes and interest payments on the property if he were forced to sell this home and rent a new home. The loss of this house would cause the co-owner irreparable harm by seriously diminishing the quality of his life.

All of these factors are present in our case however, Mr. Milligan did not take any of these factors into consideration in his proposal to sell the subject property.

14.　　In the case of *In re McCoy,* [92 B.R. 750 (Bankr. N.D. Ohio 1988)], prior to filing under chapter 7, the debtors transferred their interest in certain real estate to Jacqueline Anderson, a person for whose estate the debtor had been appointed the legal guardian. The trustee sought to sell the property under §363(h). The court in this case reaffirmed

9

the doctrine of *In re Persky,* 78 B.R. 657 (Bankr. E.D.N.Y. 1987), which held that in balancing the estate's benefit against the detriment to the co-owner, the court should consider "not only economic detriment, but also psychological, emotional and even physical detriment." In this case, the non-debtor co-owner was an individual who had been adjudicated mentally incompetent. The court considered the psychological and emotional detriment that would be suffered by a person in the non-debtor co-owner's position and found that the sale should not be authorized because the detriment to the co-owner outweighed the benefit to the estate. The court also considered the economic detriment in finding that the proceeds from the sale, if any, would not be sufficient to allow her to purchase an alternative residence. Finally, the court found further detriment to the co-owner because the property was owned free and clear of any encumbrances. The court found that the hardship of rental or mortgage payments would outweigh any benefit to the estate. Plaintiffs contend, this case reflects certain real-life circumstances that exist between both the debtor and non-debtor in this case. Mr. Milligan expects the court to grant the order to sell the subject property found in his amended complaint, without any consideration of the psychological and emotional damage to the extended family living on the property, who would suffer the trauma of being torn from their home.

15.   In the case of, *In re Trout,* [146 B.R. 823 (Bankr. D. N.D. 1992)] the non-debtor co-owner was the divorced spouse of the debtor and the exclusive resident of the property that was the subject of trustee's proposed §363(h) sale. The court found that because of the non-debtor co-owner's age and length of time as a resident on the property, she "likely...intend[ed] to live out her golden years there." The court found that forcing the non-debtor co-owner out of the home at this point "would certainly cause [her] severe emotional and psychological damage." The court also cited the *Rogers* quote noted above in *In re Persky* ("in practical terms, pecuniary compensation may not always be a completely suitable substitute for the assurance of having a roof over one's head"). Finally, the court found that because of the spouse's age and lack of substantial steady income, she would unlikely be able to obtain suitable financing to exercise her right of first refusal under §363(i), and the detriments to the spouse outweighed the benefit to the estate. This would also be a consideration in our case.

16.     Plaintiffs contend, even if the subject property were worth $150,000. (which is a high estimate), Sarah's equitable interest of $75,000.00, plus William's Equitable interest of approximately $85,000.00, and Margaret's exemption of $24,000. leaves nothing left for the estate. In the case of *In re Spain,* 85 B.R. 874 (Bankr. N.D. Ala. 1988), the court considered both economic and noneconomic factors in denying a proposed sale under §363(h). The court found that the economic benefit to the estate would be nominal. In our case, the economic benefit would be non-existent.

Plaintiffs further contend, even if Anderson had a legally valid claim, and if Mr. Milligan's avoidance action against Sarah's Deed was legal, the court has not been able to consider any of the equitable factors involved (as stated above) because Mr. Milligan has not made any such inquiry before proposing the sale now in question.

17.     Plaintiffs contend, Mr. Milligan's actions are demonstrative of a mindset that has been against us and a fair administration of the estate from the outset of the proceedings. In an email recently sent to William, **[EX 1]** Mr. Milligan resorts to ridicule and cynicism in an attempt to discourage and manipulate the plaintiffs. He then threatens to sell the entire piece of property rather than to partition it in kind, which is something he does not have the authority to do.  Mr. Milligan is presumed to know the law, and therefore he knows that he has unlawfully avoided Sarah's deed, yet continues to make demands against us by threats, intimidation, and harassment. Mr. Milligan has fraudulently avoided Sarah's deed, and any recovery from the sale of Sarah's property would be tantamount to allowing a guilty party the benefits of their fraud.

18.     Plaintiffs have brought this suit for damages against Mr. F. Scott Milligan as an individual; and also in his capacity as counsel for the Trustee; and Pursuant to 11 U.S. Code § 323(b), plaintiffs move the court for leave to sue Mr. F. Scott Milligan on behalf of the Estate in his official capacity as the legal representative and fiduciary of the estate; for fraud, Fraud Upon the Court, gross negligence, fraudulent misrepresentation or fraudulent concealment, fraudulent transfer, and violation of the bankruptcy stay arising

11

from his role in the fraudulent transfer of Sarah's property into the bankruptcy estate, and the Intentional Infliction of Emotional Distress.

## COUNT ONE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

19. Plaintiffs seek compensatory and punitive damages based on the tort of intentional infliction of emotional distress arising from the threats, intimidation and harassment, intentionally and unlawfully leveled against us by Mr. Milligan. Through fraud and Fraud Upon the Court, Mr. Milligan's has abused his authority as a Chapter 7 Trustee, and manipulated the outcome of his case against Sarah, for the purpose of unlawfully throwing all of us out of our homes. This is more than a civilized society can tolerate, and has caused the plaintiffs severe emotional injury and mental stress engendered by the circumstances of the case, which include sleeplessness, depression, anxiety, and unpleasant mental reactions such as fright, horror, grief, humiliation, disappointment, and worry.

## COUNT TWO
### ABUSE OF PROCESS

20. It is legal for process to issue to avoid a post-petition transfer of property. However, Mr. Milligan has caused process to issue in order to avoid a post-petition recordation of a Deed, when he himself instigated the post-petition recordation. Mr. Milligan has accomplished some end which is without the regular purview of the process, in order to compel Sarah and the Plaintiffs to give up their homes, which is something Mr. Milligan could not legally do.

## COUNT THREE
### FRAUD

21. In order to produce a false impression, Mr. Milligan intentionally misrepresented to Sarah that he had the authority under the code to avoid Sarah's Deed, which she originally

believed to be true and relied upon at the time. Mr. Milligan made this representation with knowledge of its falsity and with a fraudulent intent of obtaining the subject property in violation of our liberty and property rights under the federal and state constitution.

## COUNT FOUR
### FRAUD UPON THE COURT

22.　On June 30, 2020, Mr. Milligan filed a Complaint [DOC 110] which alleged certain facts regarding the Chapter 7 Trustee's authority to avoid Sarah's deed that was a fraudulent representation made to intentionally deceive the court. On October 1, 2020, the court issued its findings of fact and conclusions of law, which decisively relied upon Mr. Milligan's false representation that Sarah had recorded her Deed of her own volition; when in fact, Mr. Milligan manipulated the circumstances to have the Deed recorded, which constitutes Fraud Upon the Court.

## COUNT FIVE
### BREACH OF FIDICIARY DUTY, GROSS NEGLIGENCE

23.　Mr. Milligan devised a scheme in order to unlawfully bring Sarah's property into the bankruptcy estate, by asking Margaret in an email to "see a copy of the recorded deed," when he knew the deed had not yet been recorded. Such a request was not made in connection with his official capacity, it was not judicial in nature or authorized by the bankruptcy court; it was uttered in bad faith and grossly negligent, which constitutes a wrongdoing committed outside the scope of the trustee's authority, in the clear absence of all jurisdiction. Mr. Milligan has seized assets that do not belong to the bankruptcy estate and is individually liable for his actions.

## COUNT SIX
### FRAUDULENT MISREPRESENTATION OR FRAUDULENT CONCEALMENT

24.   Mr. Milligan purposefully engaged in conduct intended to conceal the plaintiff's injury from the plaintiff by deliberately failing to record the Adversary complaint number on DOC 110, and by preventing the Adversary Complaint against Sarah Valdes, [No. 3:20-ap-3032] in which we are a party in interest, from appearing under the main bankruptcy case at PACER.

## COUNT SEVEN
## VIOLATION OF THE STAY

25.   Plaintiffs reason, though they could find no case law to support their position (it could be a matter of first impression), that when Mr. Milligan purposefully misled the court into granting his Motion for Partial Summary Judgment and then took Sarah's property, he violated 11 U.S. Code § 362(a)(6), which states, "... a petition filed under section 301, 302, or 303 of this title,...operates as a stay, applicable to **all entities**, of...any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. Plaintiffs contend, Mr. Milligan was not acting under the authority of a trustee, but was acting ultra vires, to recover a claim for Anderson, in violation of the stay.

## CONCLUSION

26.   Paragraphs 1 - 25 are fully incorporated herein.
27.   Plaintiffs hereby consent to entry of final orders or judgment by the bankruptcy court.
28.   Plaintiffs preserve their right to a trial by jury on issues so triable.
29.   For the reasons stated herein, Plaintiffs pray for process and injunctive relief, and a Declaratory Judgment declaring that Sarah E. Valdes is the owner of the subject property; and for an order pursuant to 11 U.S. Code § 105(a) to further prevent Mr. Milligan's abuse of process; and sanctions against the defendant pursuant to Bankruptcy Rule 9011(B), for a violation of Bankruptcy Rule 9011(b), and for an order for actual damages, including emotional distress damages, compensatory and punitive damages

under 11 U.S. Code § 105, and 28 U.S. Code § 1927; for the gross fraud perpetrated upon us, sufficient in amount to deter and prevent the defendant forever from committing a similar act in the future, and for general relief pursuant to 28 U.S. Code § 1746.

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on December 5, 2020:

_William Kinney_
William Kinney

_Margaret Kinney_
Margaret Kinney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of December, 2020 a true and correct copy of the foregoing Adversary Complaint was served by U.S. Mail, postage prepaid, on the parties on the list below, which is identified as Service by U.S. Mail on the 7th day of December, 2020.

_William Kinney_
William Kinney

_Margaret Kinney_
Margaret Kinney

Chapter 7 Trustee
F. Scott Milligan
PO Box 12266
Knoxville, TN 37912

Office of The United States Trustee
800 Market Street
Suite 114
Knoxville, TN 37902

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Margaret Kinney<br>William Kinney | **DEFENDANTS**<br>F. Scott Milligan |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>pro se | **ATTORNEYS** (If Known)<br>Atty. F. Scott Milligan |
| **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☒ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Fraud (Common Law) and Fraud Upon the Court under Title 11.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
1. ☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
2. ☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
3. ☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

4. **FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>Margaret E. Kinney | BANKRUPTCY CASE NO.<br>3:20-bk-30540-SHB |||
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern | DIVISION OFFICE | NAME OF JUDGE<br>Bauknight ||
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF<br>Margaret Kinney<br>William Kinney | DEFENDANT<br>Anderson Lumber Co., Inc.<br>Kizer + Black Attorneys<br>Blue Tarp Financial, Inc | ADVERSARY PROCEEDING NO.<br>3:20-ap-03028 ||
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>East Tennessee | DIVISION OFFICE | NAME OF JUDGE<br>Bauknight ||
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>William Kinney ||||
| DATE<br>12/7/2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>William Kinney |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

William & Margaret Kinney
2442 Allegheny Loop Road
Maryville, TN  37803

Clerk of Court
United States Bankruptcy Court
Howard H. Baker Jr. U.S. Courthouse
Suite 330, 800 Market Street
Knoxville, TN 37902

December 7, 2020

       RE: Margaret E. Kinney, Debtor

          Case No. 3:20-bk-30540-SHB, Chapter 7

          Ad. No. 3:20-ap-03028-SHB

To whom it may concern,

Please file the following documents with the court:

1. **ADVERSARY COMPLIANT**
2. **SUMMONS**
3. **ADVERSARY COMPLAINT COVER SHEET**

Thank you.

Sincerely,

*William Kinney (signature)*

William Kinney